[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 I. STATEMENT OF APPEAL
The plaintiff, Roger Cote, appeals from the decision of the defendant, the Danbury Zoning Board of Appeals, denying an appeal of the Danbury zoning enforcement officer's decision that the plaintiff's residence is a two-family dwelling and thus not allowed in the single-family residence property zone.
 II. BACKGROUND
The plaintiff owns the land and dwelling located at 29 Hollandale Road, Danbury, Connecticut. (Return of Record [ROR], Item 003.) The plaintiff, along with his wife, mother-in-law, son, daughter-in-law, and two grandchildren, reside in his home. (Appeal, ¶ 1.) The plaintiff applied for various permits with the city of Danbury, in order to complete an addition he was building onto the dwelling. (ROR, Item 013, p. 2.) Wayne Skelly, the Danbury zoning enforcement officer (ZEO), visited the dwelling and concluded that it was an impermissible two-family dwelling located in a single-family zoned area. (ROR, Items 002; 013, p. 2.) The plaintiff appealed the ZEO's decision to the defendant and also applied for a variance to vary the definition of "dwelling unit" in the Danbury zoning regulations. The defendant conducted a public hearing on the matters on March 9, 2000. (ROR, Item 012.) Following the close of the public hearing on March 9, 2000, a vote was taken on a motion to uphold the ZEO's decision, which resulted in a unanimous 5-0 vote of the defendant to uphold the decision and deny the plaintiff's appeal. (ROR, Item 013, pp. 19-20.) A vote was also taken on a motion to deny the plaintiff's application for a variance, which resulted in a unanimous 5-0 vote of the defendant to deny the variance. (ROR, Item 013, pp. 21-22.) The plaintiff now appeals the defendant's affirmation of the zoning enforcement officer's decision to CT Page 4191 the court. The denial of the application of a variance is not a part of this appeal.
 III. JURISDICTION
General Statutes § 8-8 governs an appeal from the decisions of a zoning board of appeals to the Superior Court. "A statutory right to appeal may be taken advantage of only by strict compliance with the statutory provisions by which it is created." (Internal quotation marks omitted.) Simko v. Zoning Board of Appeals, 205 Conn. 413, 419,533 A.2d 879 (1987).
 IV. AGGRIEVEMENT
"[P]leading and proof of aggrievement are prerequisites to the trial court's jurisdiction over the subject matter of a plaintiff's appeal."Jolly, Inc. v. Zoning Board of Appeals, 237 Conn. 184, 192, 676 A.2d 831
(1996). General Statutes § 8-8(a)(1) provides, in part, that an "`aggrieved person' means a person aggrieved by a decision of a board. . . ."
In the present appeal, the plaintiff alleges that he is aggrieved by the decision of the defendant because he is the owner of the property subject to the decision. (Complaint, ¶ 4.) At a hearing on November 27, 2000, the court, White, J., found that the plaintiff is aggrieved as the landowner. An owner of property is aggrieved for the purposes of an appeal. Winchester Woods Associates v. Planning Zoning Commission,219 Conn. 303, 308, 592 A.2d 953 (1991). The court holds, therefore, that the plaintiff is an aggrieved party.
 V. TIMELINESS AND SERVICE OF PROCESS
General Statutes § 8-8 (b) provides, in part, that an "appeal shall be commenced by service of process in accordance with subsections (e) and (f) of this section within fifteen days from the date that notice of the decision was published as required by the general statutes." Section 8-8
(e) further provides that service "shall be made by leaving a true and attested copy of the process with, or at the usual place of abode of, the chairman or clerk of the board, and by leaving a true and attested copy with the clerk of the municipality." CT Page 4192
The record contains an affidavit of publication, attesting that notice of the defendant's decision was published on March 16, 2000 in the News-Times newspaper. (ROR, Item 006.) On March 29, 2000, this appeal was commenced by service of process on the chairman of the ZBA and on the Danbury town clerk. Accordingly, the court finds that this appeal was commenced in a timely manner by service of process on the proper parties.
 VI. SCOPE OF REVIEW
When a zoning board of appeals reviews a decision of a zoning enforcement officer, the board acts administratively, in a quasi-judicial capacity, in applying the zoning regulations to the facts. Lawrence v.Zoning Board of Appeals, 158 Conn. 509, 513-14, 264 A.2d 552 (1969). As such, it has the ability to interpret its regulations and to determine whether they apply to a given situation. Toffolon v. Zoning Board ofAppeals, 155 Conn. 558, 560-61, 236 A.2d 96 (1967). The board is endowed with liberal discretion, and the hearing consists of a de novo review of the decision of the zoning enforcement officer. Caserta v. Zoning Boardof Appeals, 226 Conn. 80, 90, 626 A.2d 744 (1993). "Where it appears that an honest judgment has been reasonably and fairly exercised after a full hearing, courts should be cautious about disturbing the decision of the local authority. The burden of overthrowing the decision of the board rested squarely upon the plaintiffs." Verney v. Greenwich Planning Zoning Board of Appeals, 151 Conn. 578, 580, 200 A.2d 714 (1964). The "court must, however, review the decision of [the] zoning board of appeals to determine if the board acted arbitrarily, illegally or unreasonably." Wnuk v. Zoning Board of Appeals, 225 Conn. 691, 695-96,626 A.2d 698 (1993). Furthermore, the court is not bound by the legal interpretation of the regulations made by the board of appeals. Coppolav. Zoning Board of Appeals, 23 Conn. App. 636, 640, 583 A.2d 650 (1990). "Although the position of the municipal land use agency is entitled to some deference . . . the interpretation of provisions in the [regulations] is nevertheless a question of law for the court." (Citations omitted.) Id.
 VII. DISCUSSION
As previously set forth, the defendant upheld the ZEO's decision because the "Zoning Regulations and the specific case law presented by the ZEO both indicate that this structure is a two family dwelling. CT Page 4193 Additionally by the evidence presented, the Board found that there were two "full-blown' kitchens with separate entrances and exits for each unit." (ROR, Item 10.) The plaintiff appeals on the grounds that the defendant acted illegally, arbitrarily, and in abuse of its discretion by: (1) failing to overturn the ZEO's decision that the plaintiff's home is not a single-family dwelling, even though the home contains only one dwelling unit and is occupied by only one "family," as defined in the Danbury zoning regulations; (2) failing to find that the plaintiff's use of the home conformed to the regulations, even though the plaintiff uses the home as a single-family dwelling; and (3) improperly interpreting the regulations.
The Danbury zoning regulations collectively set forth the definition of a single-family dwelling unit. A dwelling unit is "a housing unit containing a single room or group of rooms designed for occupancy as separate living quarters by one family. Separate living quarters are those in which occupants have direct access from outside of the building or through a common hall and kitchen facilities for the exclusive use of the occupants." (Danbury Zoning Regulations § 2B.) A one-family dwelling is defined as "a detached building with one dwelling unit; a single family dwelling." Id. A two-family dwelling is "a detached building with two dwelling units." Id. The regulations define a family as "one or more persons living together as a single housekeeping unit, who are all related by blood, marriage or adoption. . . ." Id.
The following facts are found in the record. The plaintiff, his wife, his mother-in-law, his son, his daughter-in-law, and his two grandchildren reside at the residence. (ROR, Item 013, p. 2.) All occupants are related by blood or marriage. (ROR, Item 013, p. 2.) The plaintiff's residence is a raised ranch style home consisting of two floors. (ROR, Item 013, p. 3.) At the time the ZEO visited the residence, both floors had full kitchens, each containing a sink, refrigerator, microwave and range. (ROR, Item 007, pp. 1-3; Item 013, pp. 3-7, 10.) Since the visit, the plaintiff claims that he has removed a stove from one of the kitchens. (Plaintiff's Brief, p. 5; ROR, Item 013, p. 2.) In addition to the kitchen, the lower level contains an entertainment area, two bedrooms and a full bathroom. (ROR, Item 013, p. 15.) The upper level contains three bedrooms, two bathrooms, a living room, a dining room and the kitchen. (ROR, Item 008; Item 013, p. 3.)
Each floor also has its own separate entrance. (ROR, Item 013, p. 4.) In addition, the front main entrance to the residence has access to the stairways leading both to the upper and lower floors. (ROR, Item 013, p. 4.) Near this entrance, there is a door located at the bottom of the stairway leading to the lower level. (ROR, Item 013, pp. 4, 9.) At the time of the ZEO's visit, this door had a deadbolt lock on it and the door CT Page 4194 was locked. (ROR, Item 013, pp. 9-10.) The plaintiff claims that the deadbolt lock has since been removed. (ROR, Item 013, p. 5.)
The plaintiff first argues in support of the appeal that his home consists of a one dwelling unit, thereby making it a single-family dwelling. He argues that the "home in its entirety is designed for, and used by, all of its inhabitants." (Plaintiff's Brief, p. 12.) He asserts that his family members can directly access any portion of the dwelling by entering through any one of the dwelling's entrances and that the kitchen facilities on either floor are available for the exclusive use of the plaintiff's family.
The plaintiff's next argument is that the residence is a single-family dwelling unit, thereby making it a single-family residence, because his family meets the definition of "family" in the Danbury zoning regulations. He asserts the occupants are all related by blood or marriage and operate as a single housekeeping unit, thus meeting the definition of "family" under the regulations. He further argues that the layout of the rooms of the residence is not determinative of whether the residence is a single or two-family dwelling, but, rather, it is whether the family occupying the dwelling operates as a single housekeeping unit. The plaintiff asserts that "[i]f the Plaintiff's family operates as a single housekeeping unit, using the property as a single family dwelling, the [defendant] cannot deny the appeal based on the number of kitchens in the dwelling or the use that future owners might make of the property." (Plaintiff's Brief, p. 19.)
The plaintiff asserts that his family operates as a single, integrated unit. Therefore, he claims that his family meets the requirements set forth in the regulations definition of family. The plaintiff argues that although his family operates as an integrafed unit, the family's extenuating circumstances create the need for two full kitchens and the layout of the home. In light of these extenuating circumstances, the residence is designed to meet the occupancy of the members, thereby making the residence a dwelling designed for the plaintiff's specific single family.
In essence, the plaintiff, in arguing that a single-family dwelling is a dwelling designed for a family operating as a single housekeeping unit, is asserting that the defendant incorrectly interpreted the regulations in its determination that the residence was a two-family dwelling. The defendant's decision that the plaintiff's residence is a two-family structure is based on evidence that shows each floor level to be a self-sustaining unit, separate from one another. The decision follows an interpretation of the definition of a dwelling unit to be a housing unit that is designed for occupancy as separate living quarters CT Page 4195 by one family. This interpretation of the regulation looks to the design of the structure rather than the actual operation of the family occupying the residence. The defendant found that the plaintiff's residence is a two-family residence because the design of the home allows the owner to make the residence a two-family home by simply locking the door separating the two floors. (ROR, Item 013, p. 14.) The two kitchens and the separate entrances and exits for each floor were also determining factors in the defendant's decision. (ROR, Item 10.) The basis of the plaintiff's appeal is that the defendant misinterpreted the definition of a single-family dwelling under the regulations. The plaintiff's appeal assumes the correct interpretation of the definition of a single-family dwelling requires an analysis of the actual occupants and how they function as a unit. The court will, therefore, first decide the issue of whether the defendant correctly interpreted the regulations.
Although the defendant is entitled to deference in its interpretation of the regulations, the issue is a question of law for the court. Coppolav. Zoning Board of Appeals, supra, 23 Conn. App. 640. In interpreting the regulations, the court must first look to the regulation "to determine whether the drafters expressly indicated the meaning to be assigned or the effect to be given to a particular provision of a regulation. When the words of a statute are clear and unambiguous, we assume that the words themselves express the legislature's intent and there is no need to look further for interpretative guidance." (Internal quotation marks omitted.) Lauer v. Zoning Commission, 246 Conn. 251, 266, 716 A.2d 840
(1998). Furthermore, the court must "construe the language of zoning regulations so that no clause is deemed superfluous, void or insignificant. . . . The regulations must, however, be interpreted so as to reconcile their various provisions and make them operative as far as possible. . . . When we encounter a situation in which more than one construction is possible, we will adopt the construction that renders the enactment effective and workable and reject any that might lead to unreasonable or bizarre results." (Citations omitted.) New London v.Zoning Board of Appeals, 29 Conn. App. 402, 406, 615 A.2d 1054, cert. denied, 224 Conn. 922, 618 A.2d 528 (1992).
The plaintiff's interpretation of the regulations focuses on the actual circumstances and operations of the occupants of the residence. The plaintiff effectively reads the definition of a dwelling unit to mean a housing unit designed for occupancy by one family. The plaintiff asserts that whether the structure and layout of the home is designed for two families does not determine the classification of the residence as a single or multiple family dwelling. The plaintiff instead argues that the determinative factor in resolving the classification of the residence is whether the familial occupants operate as a single housekeeping unit. CT Page 4196
The defendant's interpretation of the definition of a single-family residence is best stated simply as a housing unit structurally designed for a single family. In other words, contrary to the plaintiff's contention, the relations and operations of the actual occupants are of no consequence where the structure of the dwelling is designed for occupancy by a single or multiple families. In the present case, there are two floors that, as the plaintiff's counsel admitted at the public hearing held by the defendant, could be self-sustaining separate units. (ROR, Item 013, p. 14.) Therefore, the defendant argues that given the existence of bedrooms, bathrooms, kitchens, entertainment areas, and entrances on each floor, along with the door that could separate the levels, the plaintiff's residence is designed for two separate families or housekeeping units.
The court finds that the defendant's interpretation of the definitions is the most reasonable construction. Section 1.C. of the Danbury Zoning Regulations sets forth the purpose of the regulations.[1] The defendant's interpretation of the definition of a single-family dwelling corresponds to the ZBA's responsibility to maintain the value and character of the single-family district where the plaintiff's property is located. Although the plaintiff and his family may have certain circumstances which require the residence to be structured as a two-family dwelling as a matter of their convenience, the plaintiff, under different conditions, or a subsequent owner, could convert the dwelling into a structure containing two housekeeping units simply by locking the door which separates the floors. This could likely lead to a degradation of the use, value and purpose of the single-family district. Furthermore, a clear and unambiguous reading of the definitions demonstrates the Danbury Zoning Commission's intent that a single-family dwelling is one that is structurally designed to accommodate a single housekeeping unit, and not, on the contrary, a single related family that demands multiple self-sustaining units. Accordingly, the court holds that the defendant's interpretation of the definition of a single-family residence under the regulations was the correct interpretation.
The court now turns to the issue of whether the defendant reasonably determined that the plaintiff's residence, based on the defendant's interpretation of the regulations, is a two-family dwelling. To reiterate the standard, the plaintiff has the burden of showing that the defendant acted arbitrarily, illegally or unreasonably.[2]
The defendant found that the plaintiff's residence is a two-family dwelling because each floor of the dwelling contains two separate entrances and two full kitchens. (ROR, Item 013, p. 19.) In addition, each floor contains bedrooms, bathrooms and entertainment areas. (ROR, Item 013, pp. 3, 15.) A door, which was locked at the time of the ZEO's CT Page 4197 visit, separates the two floors. (ROR, Item 013, pp. 4, 9-10.)
The court finds that the defendant did not act arbitrarily, illegally or unreasonably in concluding that the plaintiff's dwelling is a two-family dwelling structure. The record shows that each floor is a self-sustaining unit containing its own kitchen, bathrooms, bedrooms, living areas and entrances. The dwelling is designed for two separate family, or housekeeping, units. Each floor can be used independently and exclusively of one another.
In conclusion, the court holds that the defendant correctly interpreted the meaning of a two-family dwelling, as set forth by the Danbury zoning regulations, to be a dwelling that is structurally designed for use by independent housekeeping units. Furthermore, the record shows that the defendant did not act unreasonably in deciding that the plaintiff's dwelling was a two-family dwelling. Accordingly, the plaintiff's appeal is dismissed.
White, J.